IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **SYLVIA J. PRADIA,** | § | |
| **Plaintiff,** | § | |
| **v.** | § | **CIVIL NO.** |
| | § | **3:15-CV-00036-RFC** |
| **CAROLYN W. COLVIN,** | § | |
| **Acting Commissioner of Social Security** | § | |
| **Administration,** | § | |
| **Defendant.** | § | |

## MEMORANDUM OPINION AND ORDER

This is a civil action seeking judicial review of an administrative decision of the Commissioner of the Social Security Administration ("Commissioner" and "SSA" respectively) denying disability insurance benefits ("DIB") under Title II of the Social Security Act to Plaintiff Sylvia J. Pradia ("Plaintiff"). Jurisdiction is predicated upon 42 U.S.C. § 405(g). Both parties having consented to trial on the merits before a United States Magistrate Judge, the case was transferred to this Court for trial and entry of judgment pursuant to 28 U.S.C. § 636(c), and Rule CV-72 and Appendix C to the Local Court Rules for the Western District of Texas.

Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence on the record as a whole, and there is no finding of reversible error, this Court orders that the Commissioner's decision be **AFFIRMED**.

## BACKGROUND

Plaintiff was born on August 28, 1972. (R:21) On the date last insured ("DLI"),[1] June 30, 2010, she was 37 years old. (R:15, 21) She has at least a high school education and is able to

---

[1] To be entitled to DIB, the Plaintiff was required to demonstrate disability as of her DLI. *See Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1993) (claimant required to prove disability before insured status expired); 42 U.S.C. § 416(i)(3), 423(c)(1).

communicate in English.  (R:21)  She has past relevant work experience as a corrections officer.  (*Id.*)  She has not engaged in substantial gainful activity since August 5, 2005, the alleged onset date.  (R:15)

## PROCEDURAL HISTORY

On July 20, 2012, Plaintiff filed her application for DIB, alleging a disability onset date of August 5, 2005, due to a herniated disc.  (R:13, 63, 129-131)  Her application was denied initially and denied upon reconsideration.  (R:13, 63-75)  Plaintiff filed a request for a hearing, which was conducted on May 15, 2014.  (R:13, 28-62, 76-110)  The ALJ issued a decision on July 23, 2014, denying benefits.  (R:10-23)  The Appeals Council denied review.  (R:3-8)

## ISSUES

Plaintiff contends that the ALJ's finding that she is not disabled is not supported by substantial evidence and is not based on the application of proper legal standards.  (Doc. 11:1)  Specifically, Plaintiff presents the following issues for review:

1. Whether the ALJ erred in evaluating the opinion of Dr. John "Buck" Thomason, Ph.D., the examining psychologist, by not adequately considering or discussing all of the factors set forth in 20 C.F.R. § 404.1527(c) in determining the weight to give Dr. Thomason's opinion;

2. Whether substantial evidence exists to support the ALJ's determination to give Dr. Thomason's opinion "little weight;" and

3. Whether the ALJ failed to fully develop the record by failing to recontact Plaintiff's treating physicians, Drs. Terren Klein and Carlos Viesca.

(Doc. 11)  Plaintiff seeks reversal of the Commissioner's decision and a remand for further proceedings. (Doc. 11:16)

## DISCUSSION

**I.** _**Standard of Review**_

This Court's review is limited to a determination of whether the Commissioner's decision is supported by substantial evidence, and whether the Commissioner applied the proper legal standards in evaluating the evidence. _See_ 42 U.S.C. § 405(g); _Masterson v. Barnhart_, 309 F.3d 267, 272 (5th Cir. 2002); _Martinez v. Chater_, 64 F.3d 172, 173 (5th Cir. 1995) (_per curiam_). "Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. It is more than a mere scintilla, and less than a preponderance." _Newton v. Apfel_, 209 F.3d 448, 452 (5th Cir. 2000) citing _Ripley v. Chater_, 67 F.3d 552, 555 (5th Cir. 1995) (internal quotations omitted). The Commissioner's findings will be upheld if supported by substantial evidence. _Masterson_, 309 F.3d at 272. A finding of no substantial evidence will be made "only where there is a conspicuous absence of credible choices or no contrary medical evidence." _Abshire v. Bowen_, 848 F.2d 638, 640 (5th Cir. 1988) (_per curiam_) (internal quotation marks and citation omitted).

In applying the substantial evidence standard, the court may not "reweigh the evidence, try the issues _de novo_, or substitute [its own] judgment for the Commissioner's, even if [it] believe[s] the evidence weighs against the Commissioner's decision." _Masterson_, 309 F.3d at 272. "Conflicts in the evidence are for the Commissioner and not the courts to resolve." _Newton_, 209 F.3d at 452 (citations and internal alterations omitted).

**II.** _**Evaluation Process**_

The ALJ evaluates disability claims according to a sequential five-step process: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment; (3) whether the claimant's impairment(s)

meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart B, Appendix 1; (4) whether the impairment prevents the claimant from performing past relevant work; and (5) whether the impairment prevents the claimant from doing any other work. 20 C.F.R. § 404.1520.

Before moving to step four, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"), which is the most an individual can still do despite her limitations. 20 C.F.R. § 404.1545; Social Security Ruling ("SSR") 96-8p. The responsibility to determine the Plaintiff's RFC belongs to the ALJ. *Ripley*, 67 F.3d at 557. In making this determination, the ALJ must consider all the record evidence and determine the Plaintiff's abilities despite her physical and mental limitations. *Martinez*, 64 F.3d at 176. The ALJ must consider the limiting effects of an individual's impairments, even those that are non-severe, and any related symptoms. *See* 20 C.F.R. §§ 404.1529, 404.1545; SSR 96-8p. The relative weight to be given the evidence is within the ALJ's discretion. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001).

The claimant bears the burden of proof at the first four steps of the analysis. *See Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). Once this burden is met, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is capable of performing. *Anderson v. Sullivan*, 887 F.2d 630, 632 (5th Cir. 1989). The Commissioner may meet this burden by the use of opinion testimony of vocational experts ("VE") or by the use of administrative guidelines provided in the form of regulations. *Rivers v. Schweiker*, 684 F.2d 1144, 1155 (5th Cir. 1982). If the Commissioner adequately points to potential alternative employment, the burden then shifts back to the claimant to prove that she is unable to perform the alternative work. *Anderson*, 887 F.2d at 632-33.

It is Plaintiff's burden to establish disability, i.e., a physical or mental impairment lasting at least 12 months that prevents her from engaging in substantial gainful activity, and to provide or identify medical and other evidence of her impairments.  *See* 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512(c).  Plaintiff's own subjective complaints, without objective medical evidence of record, are insufficient to establish disability.  *See* 20 C.F.R. §§ 404.1508, 404.1528, 404.1529.

In the present case, at step two, the ALJ found that Plaintiff had severe impairments, in combination if not singly, of: displacement of intervertebral disc, lower back pain syndrome, status post left shoulder arthroscopy, fibromyalgia, and depression.  (R:15)  At step three, the ALJ determined that none of Plaintiff's impairments, either alone or in combination, met or medically equaled one of the listed impairments.  (R:16)  The ALJ specifically addressed listings 1.02, 1.04, and 12.04.  (*Id.*)  She found Plaintiff's mental impairment resulted in no more than mild restrictions in her activities of daily living and social functioning, moderate difficulties in concentration, persistence, or pace, and no episodes of decompensation.  (R:16-17)

Upon considering the entire record, the ALJ determined that Plaintiff retained the RFC to perform a reduced range of light work[2] with the following limitations: she can never climb ladders, ropes, and scaffolds; can only occasionally climb ramps and stairs; can only occasionally perform

---

[2] According to the regulations:
[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

overhead reaching with the left (non-dominant) upper extremity; should avoid even moderate exposure to use of moving machinery and unprotected heights; can understand, remember, and execute only simple instructions and tasks in a work environment that is primarily object focused; can maintain concentration, pace, and persistence for two hours at a time; and has the ability to work for additional periods of two hours at a time, before and after regularly scheduled breaks in the morning, lunch and in the afternoon.  (R:17)

In reaching this conclusion, the ALJ specifically discussed Plaintiff's subjective complaints, objective findings, the opinion evidence, the testimony at the hearing, and the credibility thereof. (R:17-21)  The ALJ found the Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms—that she could not lift more than three pounds or take more than thirty steps and had difficulty with reading and math—were not fully credible. (R:18) The ALJ cited the objective evidence reflecting a moderate left subarticular herniation at L5-S1, that Plaintiff had taken anti-inflammatory medications and had completed physical therapy, had excruciating pain when raising her left arm distal to 45 degrees, but had a normal straight leg raising in both legs except for some pain upon straight leg raising of the left lower extremity. (*Id*.)  The ALJ found that in 2009 Plaintiff had been noted as running and walking long distances, with her activities of daily living much improved and her pain much relieved. (*Id*.)  Plaintiff received treatment for major depression, but her academic skills were judged as adequate, indicating to the ALJ that her attention and concentration skills were adequate for at least simple work. (*Id*.)

The ALJ gave little weight to the opinion of Plaintiff's examining psychologist, Dr. Thomason, that he could envision Plaintiff having deficits in interpersonal skills, self direction, and work tolerance due to her diagnoses of post-traumatic stress disorder, generalized anxiety disorder,

major depressive disorder, and borderline intellectual functioning.  (R:20, 848-849)  The ALJ explained that such opinion was inconsistent with Dr. Thomason's own examination notes where he noted that Plaintiff's academic skills were judged as being adequate (R:848) and with Plaintiff's statements in her Function Report that she does not have any problems getting along with others, including authority figures (R:190).  (R:20)

The ALJ also gave little weight to the 2008 opinion of Plaintiff's treating physician, Dr. Viesca, that Plaintiff would be unable to go back to work per surgeon Dr. Pacheco (R:248), and his 2009 opinion that Plaintiff would not be able to go back to work until June 2009 although Plaintiff had been running and walking long distances and her activities of daily living ("ADL") and pain had much improved (R:426).  (R:19-20)  The ALJ also gave little weight to the 2008 opinion of treating physician Dr.  Klein, who opined that Plaintiff should not work (R:424), and his 2009 opinion that the claimant should be limited to light work with no overhead reaching with the left upper extremity and a lifting limit of ten pounds (R:431).  (R:19-20)  First, the ALJ stated that it was unclear whether these doctors were familiar with the definition of "disability" contained in the Social Security Act and regulations or were merely referring to an inability for Plaintiff to perform her past work.  (R:19-20)  Second, the ALJ found these opinions to be inconsistent with the evidence as a whole and to be issues of disability reserved to the Commissioner.  (R:20)

At step four, finding the VE's testimony in response to a hypothetical question reflecting the Plaintiff's RFC consistent with the Dictionary of Occupational Titles ("DOT"), the ALJ found that Plaintiff was not able to return to her past relevant work as a corrections officer.  (R:21)  At step five, the ALJ found that, considering Plaintiff's RFC, age of 37 on the date last insured, having at least a high school education, her ability to communicate in English, and her work experience, as well as

7

the VE's testimony, there were a significant number of other jobs in the national economy that Plaintiff could perform, including shirt folder (DOT 369.687-018, SVP 2), merchandise marker (DOT 209.587-034, SVP 2), and shipping and receiving clerk (DOT 222.387-074).   (R:21-23) Consequently, the ALJ found that Plaintiff was not disabled from August 5, 2005, through June 30, 2010, Plaintiff's date last insured.  (R:22-23)

**III.**   ***Discussion***

    ***A.***    ***Evaluation of the Consultative Examining Psychologist's Medical Opinion***

Plaintiff contends that the ALJ erred by failing to consider each of the requisite factors in 20 C.F.R. § 404.1527(c) in evaluating Dr. Thomason's medical opinion.  (Doc. 11:10)  Plaintiff asserts that the only reasons the ALJ stated for rejecting Dr. Thomason's opinion are not supported by substantial evidence.  (Doc. 11:11)  Plaintiff argues that the ALJ's failure to properly consider and give great weight to Dr. Thomason's opinion was prejudicial in light of the VE's testimony that a variable work schedule would preclude work at the unskilled level.  (Doc. 11:13-14)

    ***(1)***    ***Whether the ALJ Properly Considered and Discussed All Requisite Regulatory Factors***

The Section 404.1527(c) factors are to be considered in deciding the weight the ALJ gives to "any medical opinion" unless controlling weight is given to a treating source's opinion under

8

paragraph (c)(2).[3] 20 C.F.R. § 404.1527(c) ("Evaluating opinion evidence") (effective Aug. 24, 2012).  Specifically, the regulation requires consideration of:

1.   the physician's examining relationship;

2.   the nature and extent of the treatment relationship: length of treatment and frequency of examination;

3.   the support a medical source presents for its opinion, in terms of objective medical evidence and explanation;

4.   the consistency of the opinion with the record as a whole;

5.   the specialization of the treating physician; and

6.   Other factors, including "the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has."

20 C.F.R. § 404.1527(c).

No treating physician's medical opinion was given controlling weight in this case.  Thus, the ALJ was required to evaluate Dr. Thomason's medical opinion as an examining source under the criteria set forth in Section 404.1527(c) in determining what weight to give such opinion.

At least with respect to treating physicians, when a decision is unfavorable to the plaintiff,

the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent

---

[3]   Although the Commissioner argues that it is only for treating physicians' opinions that the ALJ is required to perform a detailed analysis under the Section 404.1527(c) criteria, the authority cited by the Commissioner distinguished between medical opinions and opinions on issues reserved to the Commissioner, not between treating and non-treating physicians' medical opinions.  (*See* Doc. 13:5, citing *Villalpando v. Astrue*, 320 Fed. Appx. 208, 211 (5th Cir. 2009) ("the six factors . . . of 20 C.F.R. § 404.1527 apply only with respect to the *medical opinions* of treating physicians."); Doc. 16:1-2).  In addition to these factors, the regulations provide additional rules for considering the opinion evidence from non-examining sources.  *See* 20 C.F.R. § 404.1527(e).

> reviewers the weight the adjudicator gave to the treating source's medical opinion
> and the reasons for the weight.

SSR 96-2p, 1996 WL 374188 at *5 ("Giving Controlling Weight to Treating Source Medical Opinions") (July 2, 1996).  Further, in *Newton*, the Fifth Circuit said that "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Newton*, 209 F.3d at 453.

Plaintiff has not identified any authority requiring an ALJ's decision to contain a detailed analysis of an examining physician's views under the required factors.  (Doc. 11:10-14; 16:1-3) However, although Dr. Thomason was not a treating physician and the ALJ did not reject his opinion outright, the ALJ provided specific reasons in her decision for giving it little weight.

All of the Section 404.1527(c) factors are reflected in the ALJ's decision discussing Dr. Thomason's medical opinion.  The ALJ twice noted that Dr. Thomason was an examining physician. (R:18, 20)  Thus, there was no treating relationship for which the ALJ could evaluate the nature and extent, length or frequency.  Although the ALJ does not mention that Dr. Thomason is a psychologist referred patients by the North Carolina Division of Vocational Rehabilitation (R:839), accustomed to treating impairments similar to Plaintiff's in the context of ability to return to gainful employment (Doc. 11:11),[4] the ALJ did state that he is a psychologist, and did not suggest that he did not have

---

[4] Plaintiff does not point to any evidence in the record to support a finding regarding Dr. Thomason's expertise with treating impairments similar to Plaintiff's; there is no indication regarding either the length of time or number of similar cases that Dr. Thomason has addressed for the North Carolina Division of Vocational Rehabilitation.

such expertise.  (R:18, 20)  The ALJ went on to find that Dr. Thomason's opinion was inconsistent with his examination notes and inconsistent with Plaintiff's own statements.[5]  (R:20)

Therefore, the ALJ did not commit error by either failing to consider or failing to discuss each requisite factor within her decision with respect to Dr. Thomason's opinion.  Even if the ALJ had committed error by failing to consider a factor or failing to provide adequate explanation of such consideration in her decision, to justify reversal and remand, the identified error must affect the substantial rights of the plaintiff.  *See Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012) *(per curiam)*.  Thus, unless the error would "cast into doubt the existence of substantial evidence to support the ALJ's decision[,]" reversal is not required.  *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).  Remand is only required where, absent the error, there is a "realistic possibility" that "the ALJ would have reached a different conclusion." *January v. Astrue*, 400 Fed. Appx. 929, 933 (5th Cir. 2010) (*per curiam*).  The Court further finds that if any such error occurred, it is harmless on this record.

Plaintiff contends that, had the ALJ adequately considered whether Dr. Thomason's opinion had support in the medical records and was consistent with the whole record, she would have realized that Dr. Thomason's opinion correlated with the opinions of her treating physicians, Drs. Viesca and Klein, that Plaintiff was unable to go back to work.  (Doc. 11:11, citing R:248 (Dr. Viesca's statement that "The patient is unable to go back to work as per Dr. Pacheco") and R:424 (Dr. Klein's statement that "Work duty is no work as she is under the care of Dr. Barker, her treating

---

[5]  Although Plaintiff asserts that consistency with a claimant's statements not directed to the physician is not a factor to be considered under the regulations (Doc. 11:13), the list of factors to consider includes consistency with the record as a whole and the list is not exhaustive, containing a catch all, "other factors" such that this consideration was not precluded.

doctor.")) The Court finds that, to the extent the ALJ did not specifically consider such opinions in determining the weight to give Dr. Thomason's opinion, such consideration would not realistically have led to a different result.  First, the ALJ considered Drs. Viesca and Klein's opinions separately and gave them little weight as well.  (R:19-20)  Second, Drs. Viesca and Klein appear to attribute their determinations that Plaintiff is unable to work to the treatment decisions of Drs. Pacheco and Barker, not to their own assessments of Plaintiff's functional ability to work. Third, such statements, limited to the ultimate issue of disability, which Dr. Thomason did not address in his report, offer no support for the specific mental and psychological diagnoses or deficits that Dr. Thomason envisioned in his report.  Additionally, a later opinion by Dr. Klein opined that Plaintiff could work within certain functional limitations (R:431, 512) and Dr. Viesca noted that Plaintiff had been running long distances and that her activities of daily living and her pain were both much improved. (R:426)

Plaintiff further argues that had the ALJ adequately considered the factors, she would have found that Dr. Thomason's examination notes support his opinion.  (Doc. 11:11)  Plaintiff points to the WAIS-IV test Dr. Thomason administered, which showed that Plaintiff functioned toward the lower boundary of Borderline Intellectual Functioning range of intelligence, and Dr. Thomason's note that such scores were consistent with interview impressions.  (*Id*.; R:839)  Although the ALJ did not specifically address this test in her decision, Dr. Thomason's discussion of the test results as consistent with interview impressions and with Plaintiff's report that she had been assigned to an alternate curriculum until she entered high school (R:843, 845), suggests a continuity in Plaintiff's intelligence since before high school and not a change in intelligence due to contemporaneous mental health related issues.  Similarly, Dr. Thomason's summary and conclusions did not suggest that the

result on the WAIS-IV test reflected that Plaintiff's academic skills would be inadequate to handle academic work as she had in the past.  (R:841, 848)  Rather, Dr. Thomason lists a number of other challenges Plaintiff might face in returning to academic studies.  (R:849)  Consequently, the ALJ's failure to discuss the WAIS-IV test results or to more fully analyze the internal consistency of Dr. Thomason's examination report does not call into question the existence of substantial evidence supporting the ALJ's determination, discussed below, and does not present a realistic possibility that the ALJ would have given more weight to Dr. Thomason's opinion or reached a different conclusion regarding the ultimate issue of disability.

Plaintiff is not entitled to relief on this issue.

### (2) *Whether Substantial Evidence Exists to Support the ALJ's Decision to Give Dr. Thomason's Medical Opinion Little Weight*

Plaintiff further contends that the ALJ's decision to give little weight to Dr. Thomason's opinion is not supported by substantial evidence.  (Doc. 11:11)  As noted above, relevant evidence that reasonably supports a conclusion is substantial, even if it is less than a preponderance of the evidence.  *Newton*, 209 F.3d at 452.  Only where there is no evidence or credible choice to the contrary will a finding of no substantial evidence be made.  *Abshire*, 848 F.2d at 640.

The ALJ noted with respect to Plaintiff's mental impairment that Plaintiff had received treatment for major depression, but that Dr. Thomason stated that Plaintiff's academic skills "were judged as being adequate."  (R:18, 20, 848)  This indicated to the ALJ that "the claimant's attention and concentration skills were adequate for at least simple work."  (R:18)  The ALJ also recognized that Dr. Thomason diagnosed Plaintiff with post-traumatic stress disorder, generalized anxiety disorder, major depressive disorder, and borderline intellectual functioning, and stated that Plaintiff

13

could have deficits in interpersonal skills, self-direction, and work tolerance.  (R:20)  Specifically,

Dr. Thomason opined:

> Taking all factors into consideration, this Psychologist could envision the following deficits in functional capacity areas: interpersonal skills (e.g., she would likely require prescribed medication to establish and/or maintain appropriate interactions with coworkers and/or a work supervisor, etc.), self direction (e.g., she would likely benefit from personal assistance when adjusting to new situations, she would experience problems with concentration when faced with decisions, problem-solving, planning activities, or when completing multi-step activities, etc.), and work tolerance (e.g., she would require a variable work schedule due to disability related needs, she would be unable to perform sustained work activity for two hours or more without rest, etc.).

(R:841, 848)  The ALJ, however, found Dr. Thomason's opinion inconsistent with his own

examination notes.  (R:20)  She also found Dr. Thomason's opinion inconsistent with Plaintiff's own

function report stating that she did not have any problems getting along with others, including

authority figures.  (*Id.*)  Due to such inconsistencies, the ALJ gave Dr. Thomason's overall opinion

little weight.  (*Id.*)  The Court notes that, despite giving Dr. Thomason's opinion little weight, the

ALJ included in Plaintiff's RFC a limitation for simple instructions and tasks, a work environment

primarily object focused, and a two-hour limitation in concentration, persistence, and pace, with

regularly scheduled breaks in the morning, lunch, and afternoon.  (R:17)

Plaintiff argues that the ALJ's determination that the potential deficits listed by Dr.

Thomason were inconsistent with his examination notes is not supported by substantial evidence.

(Doc. 11:11-12)  Specifically, Plaintiff argues that Dr. Thomason's statement, noted by the ALJ, that

Plaintiff's academic skills were judged as being adequate is not inconsistent with Dr. Thomason's

envisioned deficits.  (*Id.*)

As Plaintiff points out, Dr. Thomason went on to explain that:

> Historically, [Plaintiff] proved capable of completing the academic work at a community college. Unfortunately, health challenges, working through issues with her husband, and adjusting to a recent move to the ... area may interfere with her ability to focus on her studies. Her health challenges may also affect her ability to tolerate stress.

(Doc. 11:12; R:849) Plaintiff argues that the only meaning these two statements together could have is that Plaintiff had achieved academic success in her past, but now she may experience deficits of interpersonal skills, self-direction, and work tolerance due to her health and other factors. (Doc. 11:12) In determining sufficiency of the evidence, however, the question is not whether there is substantial evidence to support Plaintiff's argument, but whether there is substantial evidence to support the ALJ's determination. *See Masterson*, 309 F.3d at 272 (the court may not "reweigh the evidence, try the issues *de novo*, or substitute its own judgment for the Commissioner's..."). There is substantial evidence to support the ALJ's conclusion that Dr. Thomason's envisioned deficiencies were inconsistent with and unsupported by his examination notes to at least some degree sufficient to give the overall opinion little weight.

The Court notes that the regulations provides that "[w]e consider evidence to be inconsistent when it conflicts with other evidence, contains an internal conflict, is ambiguous, or when the medical evidence does not appear to be based on medically acceptable clinical or laboratory diagnostic techniques." 20 C.F.R. § 404.1520b ("How we consider evidence").

In his report, Dr. Thomason stated that Plaintiff had recently enrolled at a community college and had left the school because her class schedule conflicted with her need to transport her daughter to school. (R:843) There was no indication in Dr. Thomason's examination notes that while she was enrolled she actually experienced any of the difficulties in interpersonal skills, self-direction, or work tolerance that Dr. Thomason could envision. Dr. Thomason also indicated that several

15

variables other than a medically determinable mental impairment might interfere with her ability to focus on her education.  (R:849)  Additionally, Dr. Thomason's opinion was based in large part upon Plaintiff's self-reporting where the ALJ found Plaintiff to be less than fully credible, and appears to describe, for the most part, deficits that might arise as opposed to deficits that had been observed or reported.  (R:18-20)  Moreover, at least some of Dr. Thomason's envisioned deficits are not stated in terms of assessing the most that Plaintiff could do, such as suggesting Plaintiff might benefit from having personal assistance when adjusting to new situations.  (R:841, 848)  There is substantial evidence to support the ALJ's determination to give little weight to Dr. Thomason's overall opinion based on inconsistencies and lack of support.

Specifically, regarding the area of self direction, deficiencies that Dr. Thomason could envision are inconsistent with and unsupported by his examination notes.  Plaintiff reported having difficulty concentrating and being concerned with her memory.  (R:845)  The test results did suggest difficulty with long term memory, and Dr. Thomason opined that she may appear forgetful.  (R:846, 848)  Dr. Thomason, however, did not note observing any inability to concentrate or insufficient memory when faced with decisions, problem-solving, planning activities, or when completing multi-step activities.  (*See* R:842-849)  He did not describe Plaintiff as appearing confused or unable to concentrate when given instructions for and taking the tests that he administered, or being asked questions during the examination.  Further, although on the objective tests, Plaintiff's written expression and reading abilities were higher than anticipated by her intelligence scores, and noted as possible strengths, Dr. Thomason opined that she may have difficulty expressing information through writing.  (R:846-848)  There is substantial evidence to support the ALJ's determination to give Dr. Thomason's opinion little weight.  Further, despite giving Dr. Thomason's overall opinion

16

little weight, the ALJ included in Plaintiff's RFC a limitation recognizing that Plaintiff can understand, remember, and execute only simple instructions and tasks.  (R:17)

Regarding Plaintiff's interpersonal skills, Dr. Thomason's examination notes reflect that Plaintiff had not experienced significant interpersonal difficulties on any job and that Plaintiff was polite and candid during her examination.  (R:844-845)  Although he noted that Plaintiff had been out of work since 2005, before her health issues had started, there is nothing in his examination notes to indicate that Plaintiff had begun having interpersonal difficulties since her health issues began or that her behavior during the examination demonstrated a deficiency in interpersonal skills.  (R:844)  Thus, there is substantial evidence to support the ALJ's finding that Dr. Thomason's conclusion on this issue was inconsistent with his examination notes.

The ALJ also found that Dr. Thomason's opinion regarding Plaintiff's interpersonal skills is inconsistent with Plaintiff's statements in her Function Report where she responded that she did not have problems getting along with family, friends, neighbors, authority figures, or others.  (R:190-191)  Plaintiff argues that her note in the same report, that she isolates herself, reflects that she *does* have problems getting along with people.  (Doc. 11:12-13)  The ALJ was not required to interpret the notation in the way Plaintiff suggests.  The Commissioner points out that Plaintiff also stated that she isolated herself because she was "embarrassed to be seen like this." (Doc. 13:7; R:199)  There is substantial evidence to support the ALJ's conclusion that Dr. Thomason's envisioned deficiency in interpersonal skills was inconsistent with his examination notes and Plaintiff's Function Report and to give such opinion little weight.  Further, despite giving Dr. Thomason's overall opinion little weight, the ALJ included in Plaintiff's RFC a limitation for a work environment that is primarily object focused.   (R:17)

Regarding the area of work tolerance, the deficiencies that Dr. Thomason could envision are also inconsistent with and not supported by his examination notes. Dr. Thomason provides no definition of, or explanation for why Plaintiff would need, a variable work schedule, stating only that such would be required due to disability-related needs. (R:841, 848) This is also contradicted by other evidence in the record. In June 2005, a physician indicated in an "Attending Doctor's Return to Work Recommendations" that Plaintiff could return to work immediately, with the ability to sit/walk six to eight hours a day, to sit and drive five to eight hours a day, and to use her hands for repetitive single grasping, fine manipulation, and pushing and pulling 10 pounds maximum. (R:807) In 2007, Plaintiff's chiropractor opined that Plaintiff could perform sedentary or light work. (R:692) And in 2009, Dr. Klein opined that Plaintiff could perform light work with some limitations, not including a variable work schedule or two hour limitation on concentration. (R:512) There is substantial evidence to support the ALJ's conclusion that Dr. Thomason's envisioned deficiency in work tolerance was inconsistent with and unsupported by his examination notes and to give such opinion little weight. Further, despite giving Dr. Thomason's overall opinion little weight, the ALJ included in Plaintiff's RFC a limitation in concentration, persistence, and pace for two hours at a time with regularly scheduled breaks in the morning, at lunch, and in the afternoon. (R:17)

Although Plaintiff argues that she was prejudiced by the ALJ's failure to give Dr. Thomason's opinion greater weight and to incorporate the variable work schedule limitation into Plaintiff's RFC—because the VE testified that such a limitation would eliminate all jobs at the unskilled level (R:60-61)—there is substantial evidence to support the ALJ's decision not to include such a limitation in Plaintiff's RFC.

Consequently, Plaintiff has not identified any requisite factor that the ALJ failed to adequately consider or explicitly discuss that would indicate that, but for such failure, the ALJ would have given Dr. Thomason's opinion greater weight and incorporated such a limitation into Plaintiff's RFC.  Thus, there is no indication that any such failure affected Plaintiff's substantial rights.  Even if the ALJ erred in failing to adequately consider or explicitly discuss one of the requisite factors, the Court finds such error to be harmless.  *See Taylor*, 706 F.3d at 603.  Such error, as discussed above, does not call into question the existence of substantial evidence supporting the ALJ's determination or present a realistic possibility that the ALJ would have reached a different conclusion had she more fully analyzed Dr. Thomason's opinion under the requisite factors.

Plaintiff is not entitled to relief on this claim.

### B.     Development of the Record

Dr. Viesca said that, as per Dr. Helson Pacheco-Serrant, Plaintiff was "unable to go back to work at the present time secondary to all her psychological issues secondary to chronic pain syndrome."  (R:248, 263, 403)  Dr. Klein stated that "[w]ork duty is no work as she is under the care of Dr. Barker" (R:424).  The ALJ discounted the statements by Drs. Viesca and Klein that Plaintiff could not work, saying that "it is not clear that they were familiar with the definition of 'disability' contained in the Social Security Act and regulations.  Specifically, it is possible that these doctors were referring solely to an inability to perform the claimant's past work... ."  (R:19-20)  Plaintiff contends that the ALJ's failure to recontact her treating physicians, Drs. Viesca and Klein, to clarify the basis and scope of their opinions, was prejudicial.  (Doc. 11:15-16)

The ALJ has a duty "to develop the facts fully and fairly relating to an applicant's claim for disability benefits."  *Newton*, 209 F.3d at 458 (citing *Ripley*, 67 F.3d at 557).  When *Newton* was

19

decided, 20 C.F.R. § 404.1512(e), upon which the decision relied, provided that when the evidence from a medical source was inadequate to determine disability, the treating source would be contacted to determine whether the necessary additional information is readily available, or, where there was a conflict or ambiguity in the report from your medical source, clarification sought. *Newton*, 209 F.3d at 457; 20 C.F.R. § 404.1512(e) ("Evidence").[6]  At the time Plaintiff filed her application for benefits, the regulations had been amended to provide that when the evidence received is insufficient to determine whether the claimant is disabled, re-contacting medical sources is only one of four possible actions that might be taken. *See* 20 C.F.R. § 404.1520b(c) ("How we consider evidence") (effective March 26, 2012).  Other actions include requesting additional existing records, seeking consultative examinations, and asking the claimant or others for additional information.  *Id*. However, none of the four actions is required if there is sufficient evidence to determine disability. *See* 20 C.F.R. § 404.1520b.

However, SSR 96-5p requires that for treating sources, the ALJ "make every reasonable effort to recontact such sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear []."  SSR 96-5p at *3, 6 ("Policy Interpretation []: Medical Source Opinions On Issues Reserved to the Commissioner") (July 2, 1996).[7]

---

[6]  Section 404.1512(e) contained this basic rule through several revisions until March 25, 2012, prior to Plaintiff filing her application.  20 C.F.R. § 404.1512(e) (effective June 13, 2011 to March 25, 2012).

[7]  The Proposed Revisions to Rules Regarding the Evaluation of Medical Evidence, 81 FR 62560 at *13-14 (Sept. 9, 2016), proposes to rescind SSR 96-5p consistent with the proposed changes and would include in 20 C.F.R. § 404.1520b(c)(3) guidance that no analysis about how such statements are considered should be provided in disability determinations and decisions because such statements are inherently neither valuable nor persuasive.  This change has not been

Section 404.1527(d) addresses how an ALJ will review medical source opinions on issues reserved to the Commissioner: the ALJ will review medical findings and evidence supporting a medical source's statement that the claimant is disabled and will consider opinions from medical sources on other issues reserved to the commissioner, but will not give any special significance to the source of such opinions, because the final responsibility for deciding these issues is reserved to the Commissioner.  20 C.F.R. § 404.1527(d) ("Evaluating opinion evidence") (effective  Aug. 24, 2012).

The ALJ's comments regarding Drs. Viesca and Klein's opinions that Plaintiff was unable to work, an issue reserved to the Commissioner, reflect that the bases for such opinions were not clear to the ALJ, such that SSR 96-5p required that she recontact them for clarification.  However, under Section 404.1520b, because the evidence was otherwise sufficient to determine disability, no further action was required.  Even if the ALJ erred in failing to recontact Drs. Viesca and Klein to clarify whether their statements that Plaintiff was unable to work were made applying the definition of "disability" contained in the Social Security Act and regulations, to obtain relief for such error, Plaintiff must demonstrate prejudice.

"The failure of the ALJ to develop an adequate record is not, ... , ground for reversal *per se*." *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984).  Rather, failure to develop an adequate record must have been prejudicial.  *Id.*  Such "can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision."  *Newton*, 209 F.3d at 458 (quoting *Ripley*, 67 F.3d at 557 n. 22).

---

made and was not in effect at the time the ALJ entered her decision.

To establish prejudice, Plaintiff argues that there is a very good chance that at least one of the treating physicians would have responded to the request of a Federal Judge had the ALJ recontacted the treating physicians and that if neither would voluntarily clarify their statements, they could have been subpoenaed.  (Doc. 11:16)  Plaintiff suggests that clarification of either doctor very well could have altered the ALJ's decision.  (*Id*.)  Plaintiff speculates that one or both treating physicians may have stated that he meant that Plaintiff needed a variable work schedule.  (*Id*.)  Such clarification would have supported Dr. Thomason's opinion and could have led the ALJ to give controlling weight to the treating physicians' opinions, such that, in light of the VE's testimony, the ALJ would have reached a fully favorable decision.  (*Id*.)

The Commissioner points out that "Plaintiff has not presented any evidence, aside from her own speculation, showing that, had the ALJ requested additional information from Dr. Viesca and Dr. Klein, the ALJ would have arrived at a different decision." (Doc. 13:9)  The Court notes that Dr. Klein had previously declined to fill out disability paperwork for Plaintiff.  (R:627-628)  Plaintiff has not made a sufficient showing that any additional evidence that might have been produced might have altered the ALJ's determination.  Thus, she has failed to demonstrate that she was prejudiced by the ALJ's failure to recontact Drs. Viesca and Klein.   Furthermore, the Court finds that any such error does not call into question the existence of substantial evidence supporting the ALJ's determination or present a realistic possibility that the ALJ would have reached a different conclusion had she recontacted Drs. Viesca and Klein to obtain clarification regarding the bases for their statements that Plaintiff was unable to work.

Plaintiff is not entitled to relief on this claim.

## CONCLUSION

22

Based on the foregoing, the Court hereby **ORDERS** that the decision of the Commissioner be **AFFIRMED** consistent with this opinion.

**SIGNED and ENTERED on January 3, 2017.**

**ROBERT F. CASTANEDA**
**UNITED STATES MAGISTRATE JUDGE**